JOHN S. COVINGTON, Judge.
Plaintiffs Joseph D. Patterson, Jr. and Donald Patterson, referred to hereafter as “Patterson”, filed suit against Willie Holmes, Rev. Ernest Lea, Ernest Gagnard, Andrew Grezaffi, and George Dozier (and later added Danny C. and Mona Porche McDaniel), all contiguous land owners, for the purpose of having the plaintiffs’ and defendants’ boundaries judicially established. As prayed for in plaintiffs’ petition, the 18th Judicial District Court appointed a surveyor to make a survey of the lands in controversy and to ascertain their limits to assist the court in fixing the boundary lines of plaintiffs and defendants.
Prior to trial, plaintiffs and defendants Gagnard, Dozier, and the McDaniels settled their boundary disputes, setting the boundary lines between plaintiffs’ property and those four defendants in accordance with the survey made by Wallace J. Hargrave, Court Surveyor.
At the conclusion of defendants Holmes’ and Lea’s cases, plaintiffs moved the court to dismiss the suit as to Holmes and Lea and agreed to a stipulated judgment setting the boundaries between them and those defendants as the fence running in an East-West direction as depicted on the Hargrave survey. In connection with the stipulation, the court ordered the Court Surveyor to calculate proper bearings for the fence and provide the court with an accurate description of the boundary line between the plaintiffs and defendants, Holmes and Lea, all at plaintiffs’ costs.
The only boundary dispute not disposed of by either settlements prior to trial or by stipulated judgment during the trial was the dispute between plaintiffs and Andrew Grezaffi, hereafter referred to as “Grezaf-fi”.
The trial court found the boundary between plaintiffs and Grezaffi to be the section line between Section 54 and Section 55 and assessed all costs against the plaintiff, “including the additional survey work to be performed in accordance with this judgment and the written reasons for judgment...”. Plaintiffs suspensively, and alternatively, devolutively appealed.
FACTS
Plaintiffs’ and Grezaffi’s common ancestor in their chains of title, Dr. Jefferson D. Barbre, purchased 1372 acres, “more or less”, from Dr. Albert Nichols on November 22,1898 for the recited consideration of $5,296. The land consisted of Lots 24 through 27, inclusive, and “part of Sections *396 54, 55 and 88 in Township 2 Range 7 East”, Pointe Coupee Parish, as shown on the “maps of the United States surveys”, apparently alluding to the Surveyor General’s survey map dated August 30, 1834. (Pis.’ Exhibits A and GG).
Dr. Barbre sold land to Henry Sterling and Robert Fletcher on May 14 and 18, 1899 (Pis.’ Exhibits B & C); that acreage was sold to Gordon Morgan on March 26, 1902 by Act of Sale executed before Joseph M. Patterson, Notary Public, the plaintiffs’ grandfather (Pis.’ Exhibit I); the 1902 Act of Sale gave as the boundaries of the land, with an acreage call of 75, as “North by lands of Joseph M. Patterson, South by lands of Jack Stephens, East by lands of J.D. Barbre, West by Middle Bayou.” Joseph M. Patterson bought from Jefferson D. Barbre, by Act of Sale executed October 13, 1899, land “fronting four acres and a half on Middle Bayou, bounded above by land of Mrs. Geo. Mercier, and running between parallel lines to a depth sufficient to comprise one hundred acres”, being part of the land bought by Dr. Barbre from Dr. Nichols on November 22, 1898; no section number was stated in the 1899 Barbre to Patterson sale. (Pis.’ Exhibit D).
The Barbre to Sterling sale (Pis.’ Exhibit B) declares that the acreage was bounded “N by lands of Joseph M. Patterson, South by land of Robert Fletcher and East by land of present vendor”; the Act alludes to the Nichols to Barbre sale; neither a section number nor an acreage call was stated. The Barbre to Fletcher sale (Pis.’ Exhibit C) was executed four days before the Bar-bre to Sterling sale; it states the land as “fronting 2¼ acres on Middle Bayou and bounded on the upper side [North], two and a quarter acres below land of Jos. M. Patterson, East and South by land of present vendor and running between parallel lines of the upper and lower boundaries to a depth comprising fifty acres”; the land is stated as being in Section 55. Sterling sold the Southern one-half of the land he acquired to Joseph M. Patterson on December 31, 1900; the Act of Sale described the land sold to Patterson as being “on the left descending bank of Middle Bayou fronting one acre and one eighth of an acre on said Bayou and running to a sufficient depth to comprise twenty five acres” and stated that it was “bounded N. by land of present vendor [Sterling] and East by land of Jefferson D. Barbre.” (Pis.’ Exhibit G). On the same day Sterling sold the Northern one-half of the Barbre to Sterling acquisition to Robert L. Fletcher; the Act differs from the Sterling to Patterson sale only in stating the Northern and Southern boundaries, i.e., “N. by land of Joseph M. Patterson, South by land of present vendee [Sterling]”. As in the Sterling to Patterson sale, the Sterling to Fletcher sale makes an acreage call of twenty-five acres. (Pis. Exhibit H.).
Fletcher sold the land described in Plaintiffs’ Exhibits “C” and “H” to Dr. Gordon Morgan on March 26, 1902, by Act of Sale prepared and executed before Joseph M. Patterson, Notary Public; the land conveyed was stated to be seventy-five acres “on the left descending bank of Middle Bayou bounded as follows[:] North by lands of Joseph M. Patterson[,] South by lands of Jack Stephensf,] East by lands of J.D. Barbre[,] West by Middle Bayou.” (Pis.’ Exhibit I). Morgan sold the land described in Plaintiffs’ Exhibit “I” to Joseph M. Patterson on November 9, 1903; the Township and Range are stated; the Western or Middle Bayou frontage is stated as being 3% “acres wide, on Middle Bayou” and the acreage call is contained in the phrase “and running back a sufficient depth” from the bayou “to contain seventy five acres.” The boundaries are stated identically to those stated in Plaintiffs’ Exhibit “I”. (Pis.’ Exhibit J).
Plaintiffs’ Exhibits “G”, “H”, “I”, and “J” place the land sold “on the left descending bank of Middle Bayou”; not one of the referenced exhibits gives a Section designation; each states acreage calls. The Barbre to Sterling sale (Pis.’ Exhibit B), from which the Sterling to Patterson (Pis.’ Exhibit G) and Sterling to Fletcher (Pis.’ Exhibit H) sales are derived, has the property “fronting on Middle Bayou” without the qualifying language “on the left *397 descending bank of” preceding the words “Middle Bayou” as the bayou frontage is stated in Plaintiffs’ Exhibits “G”, “H”, “I”, and “J”. Also, the Barbre to Sterling sale does not contain an acreage call.
The land acquired by Joseph M. Patterson in Acts of Sale identified as Plaintiffs’ Exhibits “G” and “J”, was sold at judicial sale in 1917 to Carl L. Patterson to satisfy a money judgment rendered against plaintiffs’ grandfather. (Pis.’ Exhibit P). Carl L. Patterson was Joseph M. Patterson’s son and the brother of plaintiffs’ father, Joseph Douglas Patterson, Sr. (R. 212). The Sheriff’s Deed conveyed the land described in Plaintiffs’ Exhibits “G” and “J”. (Pis.’ Exhibit P). The Sheriff’s Deed places both tracts of land “on the left descending bank of Middle Bayou”; it states the bayou frontage as lVs acres and 3⅜ acres, respectively, and has each tract “running back [from Middle Bayou] a sufficient depth to comprise” or “contain” 25 and 75 acres, respectively; it also states as to each tract conveyed, the Eastern boundary as the land of Barbre. As in Exhibits “G” and “J”, no Section number is stated in the Sheriff’s Deed.
Joseph M. Patterson’s land described in Plaintiffs’ Exhibit “D” was sold at judicial sale in 1917 to the Bank of New Roads which on November 30, 1917 sold the property to Carl L. Patterson, plaintiffs’ uncle. (Pis.’ Exhibit Q). The Bank of New Roads to Patterson sale, like Plaintiffs’ Exhibit “D”, did not state a Section number but stated an acreage call by declaring the land to have “a front of four and one half acres on Middle Bayou, and running back to a depth sufficient to comprise one hundred acres, between parallel lines, bounded above by lands of Mrs. Geo. Mercier, and below by lands of J.D. Barbre”.
On January 21, 1925, Ben N. Bouy bought the land described in Plaintiffs’ Exhibits “P” and “Q” from the Federal Land Bank of New Orleans (FLB) and contemporaneously therewith executed a mortgage to FLB as security for the promissory note executed that date for the majority of the purchase price. (Pis.’ Exhibit R). No Section number was stated in Exhibit “R”. The acreage calls in the three separately described tracts of land total 200. The first and second tracts (Pls.’ Exhibits G, J and P) state the Eastern boundary as land of Dr. Barbre and place the two tracts “on the left descending bank of Middle Bayou” with bayou frontage of lVs acres and 3⅜ acres and containing 25 and 75 acres, respectively. The third tract conveyed in Plaintiffs’ Exhibit “R” perpetrates the placement of the land, the acreage call of 100 acres, and the boundaries stated in the Barbre to Patterson (Pls.’ Exhibit D) sale and the Bank of New Roads to Carl L. Patterson (Pls.’ Exhibit Q) sale. On January 28, 1925 plaintiffs’ father bought the three tracts acquired by Ben N. Bouy one week earlier and assumed Bouy’s mortgage indebtedness; property descriptions and acreage calls in the three tracts remained the same in the Sale with Assumption of Mortgage. (Pls.’ Exhibit S).
Defendant Grezaffi’s chain of title is as follows: Dr. Barbre to Williams and Franklin (Pls.’ Exhibit K); Williams to Mercier (Pls.’ Exhibit L); Succession of Franklin to his heirs (Pls.’ Exhibits M and N); Franklin’s widow [Scott] to Mercier (Pls.’ Exhibit O); Succession of Mercier to Mercier’s heirs [Carnahan, et al] (Pls. Exhibit T); Carnahan, et al., to Strain (Pls.’ Exhibit U); Strain to Lambert (Pls.’ Exhibit V); and Lambert to Grazaffi (Pls.’ Exhibit W). The period covered by this chain of title is January 2, 1904 to February 4, 1965.
The Barbre to Williams and Franklin sale document, dated January 2, 1904, was executed before Joseph M. Patterson, Notary Public, who described the Western boundary of the “acres unknown but supposed to contain about” 160 acres “more or less” as the “lands of Joseph M. Patterson and Jack Stephens.” Each document of acquisition, consisting of Acts of Sale, Judgments, and Partitions, designated as Plaintiffs’ Exhibits “L”, “M”, “N”, “O”, “U”, “V”, and “W”, covering the time period March 2, 1908 to February 4, 1965, perpetuates the language “lands of Joseph M. Patterson”, followed, in the later dated documents with *398 the qualifier “now or formerly”, as the Western boundary of the land from which the Grezaffi land was derived. The land conveyed by Dr. Barbre to Williams and Franklin (Pis.’ Exhibit K) states in the Act of Sale that it is “a part of the tract of land purchased by the present vendor from Albert R. Nichols (sic).”
Plaintiffs’ father, Joseph Douglas Patterson, Sr. died on September 26, 1975; by Judgment of Possession dated June 19, 1979, his widow and plaintiffs were placed in possession of the land described in Plaintiffs’ Exhibit “S”. (Pls.’ Exhibit Y). The Judgment of Possession perpetuated the acreage calls as to all three tracts and the “left descending bank of Middle Bayou” location language as to tracts “1” and “2”. Plaintiffs’ mother donated her undivided one-half interest in the three tracts of land to them by Act of Donation executed June 4, 1979 and recorded June 19, 1979.
TRIAL COURT
The court established the boundary line between plaintiffs and Grezaffi as the section line between Section 54 and 55. In arriving at her decision the trial judge considered the many instruments of acquisition introduced into evidence by plaintiffs, Grezaffi, and other defendants before their dismissal during the trial. The court also took into account the testimony of plaintiffs, John and Andrew Grezaffi, Lawrence Lambert, Hobson Humphreys, Jr., John A. Kimball, Wallace Hargrave, and Easton Stewart. Mr. Stewart was the surveyor who prepared a survey of plaintiff’s land at their request. Mr. Hargrave was the Court appointed surveyor who investigated the boundaries between plaintiffs and defendants contiguous lands, and prepared a survey map.
The trial judge reasoned that the survey commissioned by plaintiffs to determine the limits of their property was of little probative value because “the only documents used by the surveyor were those provided by plaintiff(sic) and the surveyor made no attempt to determine any boundary with regard to titles of the adjoining properties.” Additionally, the court reasoned, succinctly, as follows:
“The Court surveyor, on the other hand, in accordance with the obligations of a Court surveyor in a boundary dispute researched the titles of all surrounding properties to determine the accurate boundary lines of all the parties. With regard to the boundary line between plaintiffs and defendants’ (Grezaf-fi) the chain of title clearly indicated that defendants’ property was located in Section 54 of T-2-S, R-7-E. No such section indication is found in the title to plaintiffs’ property although reference is made to bring in Section 55. Plaintiff(sic) contends that for their property to consist of the correct acreage amount that the tract must extend past the section line into Section 54. Plaintiff(sic) does recognize, however, that the law provides that the weakest of all calls which may be included in a description is that of quantity. The court, therefore, holds that the Patterson tract is limited by its own title to Section 55 and cannot extend into Section 54.
“In addition, the testimony indicates that there was an old fence on the section line between Section 54 and Section 55 in excess of thirty years ago which had historically been recognized as the boundary between the properties. The evidence further indicates that defendants’ ancestor in title built a new fence along the location of the old fence after being shown a stake by plaintiff’s (sic) father, their ancestor in title. The evidence further indicates that timber was purchased from plaintiff’s (sic) father by defendants’ ancestors in title along the line between the two properties. Therefore, it seems clear from the evidence that plaintiff’s (sic) father accepted and acknowledged the fence which runs along the section line dividing Section 54 and Section 55 in T-2-S, R-7-E.
“Accordingly, ... the Court finds that the boundary between the easternmost portion of plaintiff’s (sic) property and the westernmost portion of defendant *399 (Grezaffi’s) property is determined to be the section line between Section 54 and Section 55, T-2-S, R-7-E at a bearing of N1°05'W.”
The court assessed all costs, including the Court Surveyor’s fees, against plaintiffs’ because their “erroneous use and dependence of certain of their own title documents without regard or exploration of either the adjacent owners title documents or even a fair inquiry into the facts surrounding the physical boundaries which appeared” was “the primary reason for this action”.
ASSIGNMENTS OF ERROR
Plaintiffs-Appellants assign as errors by the trial court its conclusions that:
1. plaintiffs’ land was limited by their own title to Section 55;
2. a fence had been on the section line in excess of thirty years;
3. plaintiffs’ father had accepted and acknowledged the fence on the section line as the boundary between the Patterson land and Grezaffi land;
4. the section line between Section 54 and Section 55 is the boundary between the Patterson land and Grezaf-fi land; and
5. plaintiffs’ be cast for all costs.
ISSUES
1. Do the chains of title of plaintiffs and Grezaffi restrict plaintiffs’ land to Section 55?
2. Was a fence on the section line between Section 54 and 55 for more than thirty years and, if so, was the fence acknowledged by plaintiffs’ father to be the boundary between the Patterson land and Grezaffi land?
3. Were costs properly assessed against plaintiffs?
LIMITATION BY TITLE
Much of the difficulty presented to us to unravel stems from the absence of precision in the first conveyance in the chain of title common to plaintiffs and Grezaffi, namely the Nichols to Barbre sale. (Pis.’ Exhibit A). That lack of precision was perpetuated, in fact worsened, by instruments of acquisition commencing with the May 14 and May 18, 1899 Acts of Sale prepared by and executed before plaintiffs’ grandfather as the Notary Public (Pis.’ Exhibits B and C) and continuing through the January 28, 1925 acquisition by plaintiffs’ father. (Pis.’ Exhibit S).
The first semblance of precision in describing the Patterson land occurred on May 6, 1942 when plaintiffs’ father, Joseph Douglas Patterson, sold the United States a servitude of drainage or flowage across “77 acres, more or less” situated in “Section 55, Township Two South, Range Seven East” which was stated to be bounded “on the North by Pennick & Ford, Ltd., Inc.; East partly by property of Pennick & Ford, Ltd., Inc. and the property of Mrs. Eva M. Carnahan, et al; South partly by the property of Eugene Richard and the property of Mrs. Eva M. Carnahan, et al, and West by other property of J.D. Patterson.” (Pls.’ Exhibit MM-1). The sale of servitude does not purport to grant drainage or flowage rights to any property situated in Section 54. Attached to the Act was a map prepared by the United States Engineer Office, New Orleans District, dated April 7, 1942 showing “the location of the lands described below” with the customary recitation that the map “is attached hereto and made a part hereof.” The map shows the Eastern boundary to be the section line between Section 55 and Section 54.
Fifteen years after plaintiffs’ father sold the United States the servitude of drainage, Lawrence Lambert, successor in title to land owned by Eva Mercier Carnahan, et al, in 1942, sought the assistance of plaintiffs’ father in locating the boundary line between the Patterson land and the Lambert land (now Grezaffi) so that Lambert could construct a fence. Plaintiffs’ father located the iron stake marking the line between Section 54 and 55 and in response to Lambert’s question whether Mr. Patterson was satisfied with the location that *400 Lambert proposed to build the fence Mr. Patterson answered in the affirmative by saying “you’re right on top of the line”. (R. 275). The fence was built in the spring of 1958 within a matter of days after plaintiffs’ father actually located the boundary line between their properties. (R. 299). From spring, 1958 until his death in 1975 plaintiffs’ father did not protest the location of the fence on the section line between Sections 54 and 55. After the fence was built Lambert continued to harvest timber from his land and to purchase timber from Mr. Patterson at the same time.
The 1958 barbed wire fence which Lambert built was placed on the line of remnants of an old rusty wire fence that had been stapled to trees and a few fence posts, which remnants could be readily seen and which had been there as far back as 1936 at least. (R. 301, 312, 313). Plaintiff’s father rented the acreage contiguous to the Grezaffi land to John Kimball and told Kimball that the eastern boundary of the Patterson land was the fence on the section line. (R. 317). Grezaffi’s witnesses who testified regarding the remnants of the rusty wire fence were long-time residents of the area who were knowledgeable about the old fence since at least 1936.
The Court Surveyor researched and utilized conveyances from Dr. Barbre to Fletcher, Sterling, and Patterson in 1900 in preparing the survey for the court. (R. 429-433). Those conveyances are plaintiffs’ exhibits “B”, “C” and “D”.
We hold that the sale of land by Ben N. Buoy to plaintiffs’ father in 1925 (Pis.’ Exhibit S) was a per aversionem sale even though measurements or quantities are also given because the stated boundaries “control over the enumeration of measurements or quantities” and “the sale thus conveys all of the property found between the boundaries given.” Hulin v. Hale, 137 So.2d 709, 712 (La.App. 3rd Cir.1962); Cornish v. Kinder Canal Company, 267 So.2d 625, 629 (La.App. 3rd Cir.1972).
In Lavraea v. Smith, 424 So.2d 277 (La.App. 1st Cir.1982), this court stated the jurisprudential principle that “the order of importance for value of the various calls which may be included in a property description are: (1) natural monuments; (2) artificial monuments; (3) distances; (4) courses; and (5) quantity, (citations omitted)”. 424 So.2d at 278. (Parentheses supplied).
Plaintiffs and Grezaffi have a common ancestor in title. He was Dr. Jefferson D. Barbre. The parcel which ultimately became the Grezaffi tract and the three parcels comprising the Patterson land were partial sell-offs of the original 1372 acres bought by Barbre from Nichols in 1898. A section line is, in law, a monument. Turnbull v. LaHaye, 425 So.2d 1298, 1301 (La.App. 3rd Cir.1982). The owners of the Grezaffi tract in 1942, Mrs. Eva Mercier Carnahan, et al, granted an easement or servitude of drainage in 1942 over the Grezaffi tract. (Pls.’ Exhibit V). The trial court concluded correctly that “it seems clear from the evidence that plaintiffs’ father accepted and acknowledged the fence which runs along the section line dividing Section 54 and Section 55” as the boundary between the Patterson land and the Grezaffi land.
“... [T]he determination of a disputed boundary is a question of fact which should not be disturbed on appeal in the absence of manifest error, (citations omitted).” Barham v. Department of Highways, 431 So.2d 899, 903 (La.App. 2nd Cir.1983). We find the judgment of the trial court fixing the boundary in accordance with the Hargrave survey is amply supported by the record. Thus, the first and second issues are answered in the affirmative.
COURT COSTS
Plaintiffs-appellants argue that “there was a valid dispute as to where the boundary was located” and that they “made a good faith effort to settle the matter out of court prior to bringing this action” and that costs should not have been assessed against them. The trial court, in Reasons for Judgment, found that plaintiffs’ “erro *401 neous use and dependance of (sic) certain of their own title documents without regard or exploration of either the adjacent owners title documents or even a fair inquiry into the facts surrounding the physical boundaries which appeared” precipitated their suit against contiguous landowners, including Grezaffi, and for that reason further held that “plaintiffs should bear the entire burden of the costs of these proceedings, including, but not limited to, any additional survey work which must be performed in accordance with these reasons”.
The trial court has the discretion to cast either party with costs and did not abuse its discretion in taxing costs to plaintiffs whose erroneous reliance on their title documents only, coupled with their failure to investigate their neighbors’ title documents made them anything but good faith litigants. Under codal and jurisprudential authority the court was authorized to cast plaintiffs-appellants for all costs. C.C. art. 790; C.C.P. art. 1920; Kelley v. Stringer, 422 So.2d 189 (La.App. 2nd Cir.1982), writ denied 426 So.2d 177 (La.1983). Plaintiff-appellants are cast for all costs of this appeal. C.C.P. art. 2164.
For the foregoing reasons the judgment of the trial court is affirmed.