282 So.2d 779 (1973)
Isham WINCH and Wayne Winch, Plaintiffs and Appellees,
v.
John A. VEAZEY, Defendant and Appellant.
No. 4258.
Court of Appeal of Louisiana, Third Circuit.
September 18, 1973.
*780 Broussard, Broussard & Moresi by Paul G. Moresi, Jr., Abbeville, for defendant and appellant.
Cooper & Sonnier by Silas B. Cooper, Jr., Abbeville, for plaintiffs and appellees.
Before HOOD, CULPEPPER and MILLER, JJ.
CULPEPPER, Judge.
This is a boundary action brought by plaintiffs, Isham Winch and Wayne Winch to have the boundary line between their property and that of the defendant, John M. Veazey, judicially established. The defendant answered and plead the prescriptions of ten and thirty years. Harold J. Letz, a duly qualified surveyor, was appointed by the court to survey and fix the disputed boundary line, which he did. After a trial on the merits, judgment was rendered in favor of the plaintiffs fixing the *781 boundary line between their property and that of defendant in accordance with the plat of survey prepared by Mr. Letz. Defendant appealed from that judgment.
GENERAL FACTS
The properties of the plaintiffs and defendant are contiguous.
The property owned by the defendant Veazey is a ridge of high land running in a generally east and west direction on Pecan Island in Vermilion Parish, Louisiana, and the property owned by the plaintiffs is marsh land.
The plaintiffs' property is described as:
"That certain tract of land in Vermilion Parish, Louisiana, being * * * Lots 17 and 19 of Section 5, T16S, R1E, containing 127.25 acres, as per the United States Government plat of survey dated September 8, 1890."
This property was conveyed to the State of Louisiana by the Federal Government under the Swamp Lands Selection Act (U. S.C. 43:981, et seq.) and was acquired by plaintiffs' father, Isham Winch, from the State of Louisiana at public sale held on the 28th day of June, 1955.
The lands of the defendant are described as:
"One certain tract of land in Vermilion Parish, Louisiana at a place called Pecan Island, and being designated as Lots 7 and 8 of Section 5, T16S, R1E, containing 37.48 acres, more or less.",
and was patented by the Federal Government to Andre Veazey, an ancestor of defendant, the entire interest in the property being acquired by the defendant.
Lot (19) owned by plaintiffs is bounded on the south by Lot (7) owned by defendant, and this is the boundary line in dispute, this boundary line being the line separating the ridge from the marsh.
The controversial boundary line was first established by a government surveyor named Bilbo about the year 1845 and was established for the purpose of fixing the boundary line of the properties to be acquired by the State of Louisiana from the Federal Government under the Swamp Lands Selection Act, 43 U.S.C.A. 891 et seq. The line between the properties of the plaintiffs and defendant was part of the line so surveyed.
In the year 1890 a surveyor named George Elms was employed by the Surveyor General of the State of Louisiana to resurvey Pecan Island situated in Townships 15 and 16, Ranges 1 East and 1 West, and Township 5 South, Range 2 West to re-establish the Bilbo line, i. e., the line between the marsh and the ridge at Pecan Island. He completed this survey during the later part of that year.
A copy of the original survey notes of George Elms, the government surveyor as above mentioned, was introduced in evidence (Exhibit D-2) and these notes were used and followed by Mr. Letz in making his survey of the disputed boundary line.
With minor and unimportant variations the line as surveyed and established by Mr. Letz follows exactly the line surveyed and established by Mr. Elms in 1890. This fact is not disputed by the defendant who simply assumes the position that the Elms line does not correctly delineate the boundary line between the ridge and the marsh and accordingly does not properly delineate the boundary line between the property of the plaintiffs and the defendant.
A survey of the boundary line was made by a surveyor employed solely by the plaintiffs some time prior to the year 1959. At that time, the plaintiffs advised the defendant of the survey and told him that if he did not agree with this survey he could get a surveyor of his own choice so that the two surveys could be compared and some agreement reached as to the correct boundary lines. This the defendant did not do.
In 1969, the plaintiffs employed a Mr. Noy O. Lewis, a surveyor, to make a survey *782 of the boundary line, but he was prevented from so doing by the defendant.
In 1969, the defendant constructed a canal along what he asserts was the correct boundary line between his properties and the properties of the plaintiffs with a spoil bank or levee along the northern edge of the canal and a fence on the northern side of the spoil bank. The canal with the spoil bank and fence is approximately 200 feet north of the boundary line as fixed by Mr. Letz and it is the property between the Letz line and the canal that is in dispute.
BOUNDARY FIXED BY COURT SURVEYOR
The defendant submitted no evidence which showed that the Elms survey was not the correct and proper line and should not have been followed by Mr. Letz. He did submit a plat prepared by a surveyor named Sellers who made no survey of the property but simply prepared a plat showing the location of various other surveys or lines run in this area. Sellers referred to the V. E. Smith survey and plat (D-20) dated May 23, 1958. This survey appears to have been made at defendant's expense and it set out the line which defendant claims as the boundary.
The district court found the Letz survey shows the boundary line between the estates of the plaintiffs and defendant. This holding is clearly correct.
TEN YEARS PRESCRIPTION
Defendant's plea of prescription of ten years under LSA-C.C. Article 853 has no merit. Prior to the 1968 amendment to LSA-C.C. Article 833, there was a conflict in the jurisprudence as to whether Article 853 was applicable where there was no formal survey. Harvey v. Havard, 225 So.2d 615 (La.App. 1st Cir. 1969) held that a formal survey, meeting the requirements of Article 833, was necessary. In LaCalle v. Chapman, 174 So.2d 668 (3rd Cir. 1965) we took the position that a formal survey was not necessary, it being sufficient under Article 853 to show an extrajudicial survey or the consent or active acquiescence of the adjacent landowners to a visible boundary line, citing Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 (1957).
In the present case, it makes no difference which of these constructions of Article 853 is correct. Here, there has been neither a formal survey nor an extrajudicial survey to which both parties agreed, nor has there been any mutual consent to or active acquiescence in a visible boundary. Even if we were to accept defendant's argument, which we do not, that there was a visible boundary line between his land on the ridge and plaintiffs' land in the marsh, evidenced by a difference in the soil and the vegetation on the ridge and that in the marsh, defendant could not prevail under Article 853, because there is no evidence that the plaintiffs consented or actively acquiesced in such a line for ten years.
THIRTY YEARS PRESCRIPTION
Defendant's plea of acquisitive prescription by uninterrupted possession during thirty years beyond his title to a visible boundary, under LSA-C.C. Article 852, likewise has no merit. Our jurisprudence under this article requires (1) a visible boundary and (2) uninterrupted possession for thirty years to that boundary, Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 (1957); Ponder v. Fussell, 180 So.2d 413 (La.App. 1st Cir. 1965) and Stanford v. Robertson, 144 So.2d 747 (La.App. 3rd Cir. 1962).
In the present case, there was no visible boundary to which defendant possessed for thirty years. Defendant does not contend that there has ever been a fence or other artificial monument establishing a boundary line between his property and that of plaintiffs. His sole contention is that there is a visible line where the ridge stops and the marsh begins, evidenced by sandy soil on the ridge and black much in the marsh, and by short *783 grass on the ridge and saw grass in the marsh.
The evidence convinces us, as it did the trial judge, that there was no visible boundary line between the lands possessed by the parties. Defendant's own witness, Mr. Wiley Bertrand, admitted under cross-examination that there is an area from 40 to 200 feet wide where the ridge and the marsh run together, depending on whether the weather is wet or dry. Defendant's witness, Mr. Avery Choate, testified that prior to 1940 marsh grass evidenced the line between the ridge and the marsh, but in that year the saw grass was destroyed by a hurricane, and since that time the grass has been different and the line indefinite. This is not the type of visible boundary contemplated by Article 852 as sufficient to show definitely the extent of possession.
THE PRE-EMPTION STATUTE
Defendant contends next that the State of Louisiana could not have sold the land to the plaintiffs in 1955 because of the Pre-emption Statute, Act 21 of 1886 (which has since been repealed, see LSA-R.S. 41:171-176). This statute gave the possessor of property the first option to purchase the land from the State under certain procedures. Disregarding arguments as to whether the procedures under the statute were followed, the evidence does not show that defendant possessed any portion of the property sold to plaintiffs.
SWAMP LAND SELECTION ACT
Defendant's final argument is that the land in dispute is high land, not sea marsh or overflow land, and therefore was improperly selected by the State of Louisiana under the Swamp Land Selection Act, 43 U.S.C.A. 981 et seq. This argument is based on the contention that the notes of Elms' survey refer to crossing fences and fields, indicating that Elms was proceeding on high ground and not through the marsh.
The basic fallacy in this contention is that the Elms survey of 1890 was not the basis for the State selection of this land. The selection had been made on the basis of Bilbo's survey of 1845. Elms was hired by the State in 1890 to resurvey the lands it had selected, by re-establishing the Bilbo survey of 1845.
Furthermore, it is immaterial whether the Elms line encroaches on the ridge. The State of Louisiana made its selection according to the Bilbo line of 1845, which was re-established by Elms in 1890 and was followed by Letz in the present boundary action. Whatever is south of that line, whether ridge land or marsh land, constitutes the land which was purchased by defendant. Conversely, whatever is north of that line was selected by the State of Louisiana and later purchased by the plaintiffs.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.