441 So.2d 290 (1983)
Niven D. MORGAN, Plaintiff-Appellee,
v.
Jo Ann FULLER et al., Defendants-Appellants.
No. 15743-CA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 1983.
Rehearings Denied November 10, 1983.
Writ Denied December 16, 1983.
*293 Law Offices of Percy A. Ford, Jr. by Percy A. Ford, Jr., West Monroe, for defendant-appellant, Floyd Britton.
Blackwell, Chambliss, Hobbs & Henry by K. Tod Cagle, James A. Hobbs, West Monroe, for defendant-appellant, Jo Ann Fuller.
Brown, Wicker & Amman by D. Milton Moore, III, Monroe, for defendant-appellant, Monroe Pulpwood, Inc.
Wright & Hennen by Patrick H. Wright, Jr., and Dennis Hennen, Monroe, for plaintiff-appellee, Niven D. Morgan.
Before MARVIN, FRED W. JONES, Jr., and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
In a possessory action coupled with a claim for damages for wrongful cutting of timber, judgment was rendered maintaining the possessory action and assessing treble damages [under La.R.S. 56:1478.1] against the timber cutter [Britton], his vendor [Fuller], and one of Britton's vendees of the timber [Monroe Pulpwood, Inc.].
The named defendants appealed, with all three contending the trial judge erred in applying the "treble damage" statute. Additional errors urged by the respective defendants were:
(1) Brittonthe trial court erred in rejecting his third party demand against Fuller.
(2) Fullerthe trial judge committed error in maintaining Morgan's possessory action.
(3) Monroe Pulpwood, Inc.the trial court erred in finding that this defendant was engaged in a joint adventure with Britton and also in rejecting its third party demand against Britton and Fuller.
Plaintiff answered the appeal, alleging the trial court erred in failing to award damages for mental anguish, in not awarding the requested sum for cost of reforestation, and in awarding expert witness fees of $600 rather than $1350.
Context Facts
Niven Morgan acquired record title in 1939 to the following described property located in Ouachita Parish:
E ½ of NW ¼ and that part of W ½ of NW ¼ lying North of Gaskin's Branch, all in Sec. 2, Twp. 17 North, Range 1 East, less and except the r/w for the public road.
A sheriff's deed in 1971 purported to convey to Jo Ann Fuller title to the following described property in Ouachita Parish:
SW ¼ of NW ¼ NW ¼ of SW ¼ all in Sec. 2, Twp. 17 North, Range 1 East.
Under a timber deed executed in February 1980
Fuller conveyed to Floyd Britton for $28,000 all merchantable timber standing on the above described 80 acre tract. Britton proceeded to cut the timber thereon, including *294 that on the approximate 3.5 acre tract in the SW ¼ of NW ¼ lying north of Gaskin's Branch, as shown on the following rough sketch:

Upon learning of the timber cutting on the 3.5 acres, Morgan filed this suit on January 26, 1981, asking for recognition of his possession of the 3.5 acre tract and for treble damages for the wrongful cutting of the timber thereon. Made defendants, in addition to those named above, were Santiam Southern Company, Inc. ("Santiam") and C.A. Reed Lumber Company, Inc. ("Reed")both alleged purchasers of some of the timber cut by Britton.
Ruling of Trial Court
After trial on the merits, in written reasons for judgment the trial judge found that:
(1) Morgan had maintained the required possession of the 3.5 acres.
(2) Fuller, Britton and Monroe Pulpwood "should have known they had crossed the boundary between Morgan and Fuller's property in order to cut the timber."
(3) The fair market value of the timber cut on the 3.5 acres was $11,363.30.
(4) Since Fuller, Britton and Monroe Pulpwood were in bad faith, they were solidarily liable to plaintiff for treble damages under La.R.S. 56:1478.1.

*295 (5) Since Santiam and Reed simply purchased saw logs from Britton and did not actively participate in the wrongful cutting, the claims against them would be rejected.
Maintenance of Possessory Action
Pertinent to the possessory action are the following articles of our Code of Civil Procedure:
Article 3655. The possessory action is one brought by the possessor of immovable property or of a real right to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted.
Article 3658. To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.
Article 3661. In the possessory action, the ownership or title of the parties to the immovable property or real right is not at issue.
No evidence of ownership or title to the immovable property shall be admitted except to prove:
(1) The possession thereof by a party as owner;
(2) The extent of the possession thereof by a party; or
(3) The length of time in which a party and his ancestors in title have had possession thereof.
Article 3662. A judgment rendered for the plaintiff in a possessory action shall:
(1) Recognize his right to the possession of the immovable property.....
* * * * *
(3) Award him the damages to which he is entitled and which he has prayed for.
The Louisiana Civil Code deals with the subject of possession in the following relevant articles:
Article 3424. To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing.
Article 3425. Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing.
Article 3442. When a person has once acquired possession of a thing by the corporeal detention of it, the intention which he has of possessing, suffices to preserve the possession in him, although he may have ceased to have the thing in actual custody, either by himself or by others.
Our jurisprudence has consistently recognized the principle that when a contiguous tract of land is conveyed by a single deed, possession exercised on any part of that tract extends, constructively, to the limits of the land as called for in the deed itself. La.C.C. Art. 3437; Marks v. Collier, 216 La. 1, 43 So.2d 16 (1949); Case v. Jeanerette Lumber & Shingle Co., 79 So.2d 650 (La.App. 1st Cir.1955).
There is no question but that plaintiff's 1939 deed covered the 3.5 acres in the SW ¼ of NW ¼ of NW ¼ lying north of Gaskin's Branch [slightly overlapping property to which Fuller secured a deed in 1971]. It was undisputed that soon after acquisition of the 123 acre tract plaintiff began to grow crops on part of it and subsequently engaged in other acts of possession such as: raising hogs on a portion of the land; selling and having timber cut therefrom; removing a house and barn; executing mineral leases covering the tract and receiving royalty payments from a producing well. Plaintiff has paid property taxes on the 123 acres since 1939. Although not living thereon, plaintiff has made three or four inspection trips to the property each year *296 and has for some time arranged for a caretaker [who lives nearby] to oversee the tract.
There was no evidence that plaintiff ever had timber cut from the 3.5 acres involved in this litigation, nor used that specific small marshy area for other like purposes. Be that as it may, under the cited jurisprudence plaintiff's exercise of corporeal possession of other parts of the property described in his deed operated as constructive possession of the entire tract, including the 3.5 acres. Consequently, the trial judge was correct in his determination that plaintiff successfully complied with the requirements of La.C.C.P. Art. 3658 and in maintaining the possessory action.
Applicability of "Treble Damage" Statute
Prior to 1974 the measure of damages for the unlawful cutting of timber was as follows: if the trespass was reckless and willful, the trespasser was deemed guilty of moral bad faith and liable for the converted value of the timber without allowance or deduction for costs and expenses. Where the trespasser believed himself to be owner of the timber but should have known otherwise, either from information available to him or other ascertainable facts which would have placed a reasonably prudent man on notice, he was held to be in legal bad faith and the actual expenses incurred by him in converting the timber were deducted in assessing damages. In cases where the trespasser was in good faith [believed the timber belonged to him and had no valid reasons to suppose otherwise] he was held liable only for stumpage value. Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847 (1951).
In 1974 the following statute [now R.S. 56:1478.1] was enacted:
A. It shall be unlawful for any person to cut, fell, destroy or remove any trees, growing or lying on the land of another, without the consent of the owner or legal possessor.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed or removed.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed or removed, except however, that the provisions of this section shall apply only to trees cut or removed across ownership lines, marked boundary lines, or outside of designated cutting area lines, and that no provision herein shall apply to cutting operations within an area covered by a contract or agreement with the owner. (emphasis added)
D. The provisions of this section shall not apply to the clearing and maintenance of rights of way or to utility service situations where a utility is acting in good faith to minimize the damage or harm occasioned by an act of God; the provisions of this Act shall not apply to land surveying by or under the direction of a registered professional land surveyor, duly registered under the laws of the state of Louisiana.
* * * * *
Although somewhat inartfully drafted, the statute viewed in its entirety appears to manifest an intent by the legislature to impose a severe penalty [treble damages] upon those who flagrantly disregard the property rights of timber owners. See Smith v. Myrick, 412 So.2d 677 (La.App. 2d Cir.1982); Garrett v. Martin Timber Company, Inc., 391 So.2d 928 (La.App. 2d Cir. 1980).
We note, however, that the statute expressly excludes from its sanctions "cutting operations within an area covered by a contract or agreement with the [purported] owner." Since Britton was cutting timber under such a contract within the geographical area covered by that written instrument he would not be subject to treble damages.
*297 Although this finding disposes of the issue in question, we add that the record does not support a conclusion that Britton was "willful and intentional" in his trespass [apparently meaning in "bad faith"] or that he crossed a marked boundary line.
According to the evidence, Gaskin's Branch runs in a northwesterly-southeasterly direction across the forty in question. It is relatively narrow and lies in a marshy area. On the east side of the forty it has 1½ foot banks and on the west side has 4 foot banks.
Plaintiff testified that in the early 1940's he marked his property line running along the north side of Gaskin's Branch by painting yellow lines on trees. However, because these lines were fading, some 20 years ago he made blaze marks with a hatchet on trees about 100 yards apart along that same boundary line.
Plaintiff also stated that in 1978 he observed remnants of an old barbed wire fence embedded at intervals in trees along the south side of the branch. He added that the timber standing north of the branch was much larger than that south of the branch.
Floyd Britton [57 years old, in timber business since 1944] denied ever having heard of Gaskin's Branch prior to this litigation. Britton testified that because of his uncertainty about the location of the north boundary of the Fuller property, he contacted O.W. Schulz [forester for Monroe Pulpwood] and had him locate and mark that line.
Schulz corroborated the testimony of Britton on the latter point. Though not a surveyor, Schulz stated that he has been frequently called upon in the timber business to assist in tasks of this nature, which normally entailed locating corners and using a compass to run a line to another corner.
Schulz testified that he found what he ascertained to be the northwest corner of the Fuller tract at a witness tree and then proceeded east where, upon reaching the east line, he found another tree with a marking on it. He placed orange flags along this line for the benefit of Britton and his timber cutters.
Schulz denied observing any signs indicating that Gaskin's Branch was a boundary line.
Claude Britton, brother of the defendant, Floyd Britton, testified that he had been caretaker of plaintiff's property for some 31 years. He had cut pulpwood on the property every five years for the past 30 years. Britton denied that there was a marked line [either painted or blazed] along either bank of Gaskin's Branch.
The evidence that defendant Britton sought the assistance of an experienced forester [upon whom he presumedly could rely] in locating the north line of the tract covered by his timber deed effectively refutes any contention that his trespass was willful and intentional. There was no reason for him to believe that a small branch which meandered across the northeast corner of the property in question might be the boundary of the Fuller tract, rather than the straight line marked by Schulz. Furthermore, viewing plaintiff's testimony relative to boundary signs in a light most favorable to him, bits and pieces of an old fence line embedded in trees on the south line of the branch and old blaze marks placed at 100 yard intervals north of the branch would not suffice to indicate to an individual in Britton's position that he was crossing a boundary line. Neither would the existence of larger trees on the north side of the branch in itself alert the trespasser to the imminence of a violation. Any finding of the trial judge to the contrary is manifestly erroneous.
Our determination that Britton was not subject to the imposition of treble damages under La.R.S. 56:1478.1 for his trespass automatically relieves Fuller and Monroe Pulpwood from that assessment also. Regardless, neither of these two defendants should have been cast for treble damages even if Britton had been. The evidence was that the latter was Fuller's vendee, not her agent or employeeas required *298 by the statute. The record is also devoid of evidence that Britton and Monroe Pulpwood were involved in a joint venture with reference to the Fuller timber. Britton did in fact sell some of the saw logs to that defendant, but sold the pulpwood and other saw logs elsewhere.
For these reasons, we find that the trial judge erred in casting the defendants-appellants for treble damages.
Proper Measure of Damages
Since the trespasser Britton is not liable to plaintiff for treble damages, what is the proper measure of damages? As we have previously explained [see Kennedy, supra], this depends upon whether, from the evidence, this defendant should be characterized as having been in moral bad faith, in legal bad faith, or in good faith.
Our prior determination [in discussing applicability of "treble damage" statute] that Britton's trespass was not willful and intentional, negates a finding of moral bad faith.
Since there was no evidence that, because of facts or information available to him, Britton should have been on notice that the timber on the 3.5 acre tract did not belong to him, neither can we say that he was in legal bad faith.
Based upon this reasoning, we conclude that the timber cutter was in good faith when he trespassed upon the 3.5 acres possessed by plaintiff. Consequently, this defendant is liable to plaintiff for the stumpage value of the timber removed from that particular tract.
The determination by the trial judge that the stumpage value of the timber removed from the 3.5 acres was $11,363.30 is a finding of fact, not manifestly erroneous since supported by record evidence, which we shall not disturb.
Since we have concluded that Britton was a good faith trespasser, plaintiff's contention that he is entitled to damages for mental anguish is rejected. Garrett v. Martin Timber Company, Inc., supra, p. 933.
However, plaintiff is entitled to recover damages for the cost of clearing and reforesting the 3.5 acres. Thibodeaux v. Western World Insurance Co., 391 So.2d 24 (La.App. 3rd Cir.1980). The trial judge erred in failing to grant recovery for that element of damages, which the record shows amounted to $3,633.50.
Plaintiff's argument that the trial judge's award for expert witness fees should be increased is without merit. The record does not reveal an abuse of the broad discretion accorded to the trial court in fixing expert witness fees. See Kelley v. Stringer, 422 So.2d 189, 194 (La.App. 2d Cir.1982).
Solidary Liability of Fuller and Monroe Pulpwood
There is no solidary liability on the part of Fuller and/or Monroe Pulpwood with Britton since, as explained above, the evidence does not show that Britton was acting as their agent or employee or that he was engaged in a joint venture with either or both of them at the time of the timber cutting.
Britton's Third Party Demand Against Fuller
Although the timber deed from Fuller to Britton contained no express warranty, our law supplies that warranty. La. C.C. Article 2501. As a consequence, Britton has a right to recover from Fuller any damages he has sustained by virtue of the breach of warranty. La.C.C. Article 2506(4). Under the circumstances of this particular case, Britton is entitled to judgment against Fuller on the third party demand for the amount of damages assessed against him in favor of Morgan. The trial judge committed error in failing to render judgment accordingly.
Decree
For the reasons set forth above:
(1) The fourth paragraph of the district court judgment, in favor of Morgan and against Britton, Fuller and Monroe Pulpwood, *299 in solido, for $34,089.90 and costs is amended and recast to read as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, NIVEN D. MORGAN and against defendant, FLOYD BRITTON, for the sum of $14,996.80, together with legal interest from date of judicial demand until paid and for all costs of these proceedings, including expert witness fees of $600, but rejecting plaintiff's demands and dismissing his suit as to defendants, Jo Ann Fuller and Monroe Pulpwood, Inc."
(2) The sixth paragraph of the district court judgment is amended and recast to read as follows:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all third party demands be denied, except that there is judgment in favor of third party plaintiff, Floyd Britton, and against the third party defendant, Jo Ann Fuller, for the full amount of the judgment as above set forth in favor of Niven Morgan against Floyd Britton."
(3) Otherwise, the judgment appealed is affirmed.
Costs of appeal are assessed in the proportion of one-third each to Fuller, Britton and Morgan.