JOHN S. COVINGTON, Judge.
From a judgment rendered and signed January 3, 1984, plaintiff and defendants suspensively appeal.
Plaintiff, James Elude Williams, hereinafter “Williams”, initiated this proceeding by filing a pleading styled “Petition for Recognition as Owner of Immovable and Establishment of Boundary.” The petition alleged, inter alia, acquisitions which plaintiff deemed to be his and defendants James C. and Ruth Thomas Baughman’s, hereinafter “Baughman”, chain of title. Williams alleged that “the eastern margin and boundary of his property, being the edge of Ard’s Creek Swamp has not been established or set and he desires that the same be established by an actual course and distance description in addition to the natural boundary description in accordance with his deed.” Williams further alleged that he “has not been allowed to enter into possession of the property described and purchased by him due to acts of interference by James C. Baughman.”
In his answer, Baughman admitted he had refused to allow Williams “enter into possession”, as Williams alleged, denied that the description in Williams’ deed is either a natural boundary or one susceptible of establishment by an actual course and distance description, affirmatively pleaded superior title to the disputed area, and prescriptions of ten, twenty, and thirty years. In addition, Baughman pleaded acquiescence by Williams and his ancestors in title that Baughman’s description was correct and, further, that “this suit is not one properly ... an action in boundary because defendants’ title calls for a natural boundary which is ascertainable and obvious.”
Trial was held on July 1 and October 13, 1982 and taken under advisement. On November 29, 1982, District Judge John W. *736 Greene rendered his written reasons for judgment, concluding that: (1) “with the exception of the area covered by the pond waters which were backed up by the dam built by plaintiffs ancestor in title, Mr. Harris”, defendant Baughman “has proven open and notorious possession of subject property for a period well in excess of thirty years”; (2) “It is difficult to establish the exact edge of this pond area as it has existed through the years”; (3) “water has been standing in the pond area as a result of the dam built by Mr. Harris and maintained by plaintiff to the extent of the waterline drawn by Mr. Porter on May 10, 1982 [and] this water has been standing a sufficient length of time to prohibit defendant from acquiring the pond bottom by acquisitive prescription”; and (4) “since the common ancestor to both defendant and plaintiffs title executed the deed to plaintiffs ancestors in title before executing the deed to defendant, ... plaintiff has better title to this pond bottom.”
Based on the “description of line between James E. Williams and James Baughman” furnished by Richard R. Porter, Civil Engineer and Land Surveyor, on his letterhead and dated October 10, 1983, the judgment was prepared by Williams’ attorney and rendered and signed on January 3, 1984.
Mr. Porter was not the Court’s surveyor as that term is used in C.C.P. arts. 3691 through 3693. Instead, he was privately retained by Williams.
ASSIGNMENTS OF ERROR
Appellant Williams assigns as errors the Trial Court’s
1. “finding that defendants had exercised continuous uninterrupted, public, un-equivocable (sic) possession under title of owner for thirty (30) years”; and
2. failure to establish the boundary between the parties based upon their titles and possession.
Appellants Baughman assign as errors the Trial Court’s
1. fixing the boundary between Williams and Baughman “partially along the north edge of Ard’s Creek and partially along the so called ‘pond’ water line dated May 10, 1982 instead of fixing the boundary as the north edge of Ard’s Creek as described in Baughman’s deed”; and
2. “not specifically finding that the property description in Williams’ title was unclear and therefore, not translative of title, or sufficiently clear with which to fix a boundary of any certainty.”
ISSUES
The issues presented on appeal are:
1. Did Baughman and his ancestor in title exercise continuous, uninterrupted, peaceable, public and unequivocal possession as owner for either ten or thirty years within the intendment of C.C. arts. 3424, 3475, and 3486?
2. Was either Williams’ deed or Baugh-man’s deed translative of title to the disputed area between the Eastern edge of Ard’s Creek Swamp and the Northern edge of Ard’s Creek?
3. Was Baughman’s possession of the disputed area interrupted by the creation of the pond, formed by dams built by Williams or his vendor, which inundated part of the area several years after Baughman’s possession had begun?
FACTS
J. Lawrence Conerly bought some land located in Washington Parish, stated to be 150 acres, from his siblings, by an Act of Sale under private signature executed at various places in Louisiana and Mississippi between January 11 and February 25,1935. The description of the land included the following language:
“... thence N. crossing Ard’s Creek to a point on the east edge of creek swamp; thence down eastern edge of Creek Swamp to where it intersects the eastern boundary to John Cracker Hr. 43; ... ”
By authentic act executed before W.I. Daniel, Notary Public, on January 22,1941, J. Lawrence Conerly sold the land acquired in 1935 to Jesse B. Harris; the Sale with *737 Mortgage was recorded in the Conveyance Records on January 24, 1941 and in the Mortgage Records on January 25, 1941; the quoted language was repeated verbatim in the Conerly to Harris sale and the stated acreage was the same.
By an authentic Act of Sale executed and recorded March 17, 1967, Harris sold the land, stated to be 159 acres, utilizing the same description of the two prior acts, to Williams, plaintiff-first appellant.
In the act by which J. Lawrence Conerly acquired from his siblings, Carl S. Conerly, brother of J. Lawrence Conerly, signed and was named as one of the vendors.
By an authentic Act of Sale with Mortgage executed before W.I. Daniel, Notary Public, on November 25, 1935 and recorded November 26, 1935, Carl S. Conerly sold to Lucious E. Magee “Fifty (50) acres of land, more or less” and stated one boundary thusly:
... “bound on the ... South and Southwest by North edge of Ard’s Creek swamp.”
Magee conveyed the same land back to Carl S. Conerly, by Act of Sale under private signature with acknowledgements before W.I. Daniel on January 13, 1937 and recorded January 19, 1937; the identical descriptive language quoted above was used in the 1937 Act.
By an Act of Sale under private signature dated June 21, 1941 and recorded July 11, 1941, Carl S. Conerly conveyed title to the “50 acres of land, more or less” to James C. Baughman, defendant-second appellant. With the exception of the word “swamp”, the description above was used in the deed, thus stating a boundary to be “South and Southwest by North edge of Ard’s Creek.”
DISTRICT COURT’S FINDINGS
In his written reasons for judgment, Judge Greene made findings of fact, stated in pertinent part as follows:
Plaintiff’s vendor ... constructed a dam on Ard’s Creek around 1947 which backed water up along the edge of Ard’s Creek. After plaintiff purchased this property in 1967, he added to this dam making the pond a little larger.
Plaintiff ... certainly did not possess this [disputed] area, and in fact, admitted in his pleadings that he had never been in possession of this property.
... Defendant has proven open and notorious possession of the subject property for a period well in excess of thirty years with the exception of the area covered by the pond waters which were backed up by the dam built by plaintiff’s ancestor in title, Mr. Harris. In 1937 defendant sold the timber off this disputed property. In 1938 defendant constructed a water gap extending from his undisputed property to the edge of a side stream near the main creek and has maintained this water gap constantly since that date. In 1943 defendant cut timber on the disputed property in order to build a barn. Again in 1950, defendant cut trees on subject property in order to build a new house. In 1952 defendant sold pine and hardwood timber on the disputed property. ... [Defendant executed four oil leases covering subject property, two ... in 1944, another ... in 1947 and one in 1951. Defendant cut firewood on this disputed land. [His] son hunted in the area and built a little playhouse ... [He] ... burned off the dry portion ... several times. He controlled the property to some degree by trying to determine who could and could not hunt on it.
DEFENDANT’S DEED AND POSSESSION
While the district court found as a fact that defendant sold timber in the disputed area in 1937 and constructed a water gap thereon to “the edge of a side stream near the main creek” in 1938, the court did not allude to the basis for defendant’s first act of dominion over the disputed area, namely the selling of the timber. The record reflects that on January 27, 1937, Baughman executed seven hand notes, each for $100, *738 paraphed by W.I. Daniel, Notary Public, as follows:
“NE VARIETUR”
“Identified with an Act of Contract of Sale executed before me this 27th day of Jany. 1937, said act containing the ‘pact de non aliendo’ and clause of 15% attorney's fees, if placed with an attorney for collection.”
The foregoing was followed by the signature “W.I. Daniel, Notary Public.” The seven notes were introduced into evidence to bolster Baughman’s testimony that he “bought it [the fifty acres from Carl C. Conerly in 1937] on a credit sale and we paid one hundred dollars down and we had seven notes to pay.” A receipt was also introduced into evidence; it recited as follows:
“165.00
Angie, La. 8-9-1937
RECEIVED from James Baughman One Hundred Sixty Five & no/100 Dollars For acct. C.S. Conerly to apply on land contract notes Nos. 6 & 7.
W.I. Daniel.
Cashier.”
(Emphasis ours.)
Baughman introduced into evidence a typewritten letter, bearing the date August 6, 1937, and an envelope bearing the postmark “Lyman, Miss. August 6, 1937, 8:30 A”, directed to “Mr. James Baughman, Angie, La.” The text of the letter is as follows:
“Dear James, I received your letter, also one from Lawrence on same date.
It will be agreeable to me for you to sell all the pine timber, except 25 trees selected by you, on the place for the sum of $150.00 Cash.
Also I agree to Lawrence paying $15.00 for the pine timber on the lands in question as to line locations.
All the money to be deposited at Bank in Angie to my credit, to apply on last notes due on the place.
Purchaser to have six months to remove the pine timber, all timber remaining at the end of six months to belong to seller.
James, — you understand that the reason for letting the money apply on the last notes is that the value of the place will be less by having removed the pine timber. This will benefit you inasmuch as the interest will stop on this amount as soon as it is paid in and this will amount to something.
Mr. Daniel has the notes in the Bank and I will ask him to please give you a receipt for the money, in my name and apply same to last payments on place contracted for, he will hold all notes and attach copy of receipt to you to last notes. Mr. Daniel will send me deposit slip for the money deposited.
I believe that this will be sufficient for you to go ahead with the transaction, however if Mr. Harris wants a longer contract he can have one written up and send over here for my signature, and for yours, with the provisions to suit us both written therein.
With regards and best wishes, I am Sincerely yours.
Carl S. Conerly.
Copy to
Mr. W.I. Daniel,
Mr. J.L. Conerly”
Defendant testified that the foregoing letter was in response to his writing Carl Conerly that Thomas Pigott, Land Survey- or, had “surveyed a line down through ... the creek swamp” for Lawrence Conerly whom Baughman told that he, Baughman, “could not abide by” the proposed line Pi-gott had run. Baughman further testified that after the timber was sold in 1937 to Jesse Harris, Lawrence Conerly’s vendee in the January 22, 1941 land transaction, (1) Lawrence Conerly made no further claims to the disputed land in the creek swamp, (2) the surveyor did not, to Baughman’s knowledge, ever draw a plat depicting his survey, and (3) Baughman and Lawrence Conerly’s relationship remained a good one until Conerly moved away when he sold to Harris in January, 1941.
*739 The record, as a whole, establishes that: (1) several dams were built on Ard’s Creek by Jesse Harris and each one “blew out” during high water or flooding by the Pearl River; (2) the dam in place in 1950 and 1952 did not form a pond on the disputed area; (3) Baughman's fence extended to the edge of the creek before 1952 and beyond; (4) Baughman sold timber out of the creek swamp in 1952 and cut firewood there before and after 1952; and (5) Baughman not only did not allow hunting in the swamp, or any other part of his land, but he chased away all trespassers he knew about, whether fishing or hunting.
The Contract of Sale alluded to in the seven notes, the receipt, and Carl Conerly’s August 6, 1937 letter, was not recorded. The Notary Public, also a banker in Angie, who paraphed the seven notes and signed the receipt issued August 9, 1937, was not living when the dispute giving rise to this litigation arose. J. Lawrence Conerly, Carl C. Conerly and Jesse Harris all died before the present controversy arose.
Jesse B. Harris was one of the attesting witnesses to James C. Baughman’s signature to an Oil, Gas and Mineral Lease of the entire acreage on April 20, 1951, one of the lines of the leased property being stated as “on the South and West by the North edge of Ard’s Creek.” The referenced lease was introduced into evidence by defendant. Defendant testified that “about 1951 or along in there” Jesse Harris, in casual conversation, briefly told Baughman they “had a deed to the same property and ... we needed to straighten it up” but “he never brought it up again” after Baugh-man’s reply “reminded him of this conversation and this timber sale in 1937 and that agreement ...” The record is silent as to the time Harris and Baughman’s conversation about the disputed area took place, whether before or after Harris witnesses Baughman’s signature on the mineral lease described above. Baughman executed three previous mineral leases, each referencing Ard’s Creek as one boundary; those leases were executed in 1944 and 1947. The Conerly to Magee and Magee to Conerly acts were ruled inadmissible and defendant made them a part of the record by making a proffer of both.
PLAINTIFF’S AND HIS ANCESTOR’S DEED AND POSSESSION
J. Lawrence Conerly’s acquisition of land, stated to be 150 acres, early in 1935, is referred to earlier and is a part of this record. Carl S. Conerly’s act of acquisition from his siblings in 1935 is not in the record but its existence was the subject of several witnesses’ testimony. It would have been helpful, but not essential, in comparing the “creek swamp” and “edge of Ard’s Creek” language found in J. Lawrence Conerly’s 1935 Act of acquisition with Carl C. Conerly’s act of acquisition. Presumably, however, the sale with mortgage executed November 25, 1935 (Conerly to Magee), stating one boundary as being “South and Southwest by North edge of Ard’s Creek swamp”, was used in the act whereby Carl Conerly acquired the land from his siblings either before, at the same time, or after Carl and his siblings sold the land, ultimately bought by plaintiff, to Lawrence early in 1935.
The deeds from Lawrence Conerly’s siblings to Lawrence in 1935, and all subsequent deeds in plaintiff’s chain of title, remained the same except for the acreage call made in the sale to plaintiff on March 17, 1967; the 1967 stated the acreage to be 159; the two earlier deeds stated the acreage to be 150.
Plaintiff testified that in 1969 Hurricane Camille’s rainfall caused the old Harris dirt dam in Ard’s Creek to “blow out”; however, he replaced the “blown out” dam with a sturdy seven foot concrete dam “about 1973” and since the structure was replaced the water level in the pond varied “not over a foot” between then and the trial in 1982. Plaintiff further testified that he had not had a complete survey made of his land, commissioning the surveyor, Richard R. Porter, for the sole purpose of running a line to establish the “East edge of Ard’s Creek Swamp.” Plaintiff, on cross examination, admitted he never walked over the *740 disputed area with his vendor, going from the road onto the property “about one hundred feet” because “I knew [Harris] knew what he was talking about” when he pointed out the Harris property line as extending across the creek and to the edge of the creek swamp, just below Baughman’s field fence.
Plaintiff’s surveyor, Mr. Porter, testified that in fixing the Eastern edge of the creek swamp, he like any surveyor, must “make some decisions about what you think might be a swamp. That’s what I did in this case as to my opinion that’s about where I think the swamp is.” He further testified that other than “what Webster might have given” as a definition of “swamp” there is no commonly accepted definition of the term in the surveying profession and possibly another surveyor in good faith might find the swamp line completely different or somewhere else. Mr. Porter further testified that had he used the literal description contained in plaintiff's deed it might have put the North edge of the swamp 500 to 600 feet “back up in the next Headright” or “across the road over to where Mr. Kennedy’s property is” so to resolve the conflict he chose not to cross the road and into the Kennedy property.
DEEDS TRANSLATIVE OF TITLE C.C. art. 3475 states:
“The requisites for the acquisitive prescription of ten years are: possession of ten years, good faith, just title, and a thing susceptible of acquisition by prescription.”
C.C. art. 3483 defines “just title” as “a juridical act, such as a sale, exchange, or donation, sufficient to transfer ownership or another real right.” The article further states that “the act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovable is situated.” C.C. art. 3485 makes the land “susceptible of prescription.” C.C. arts. 3480 and 3481 provide as follows:

Article 3480

“For purposes of acquisitive prescription, a possessor is in good faith when he reasonably believes, in light of objective considerations, that he is owner of the thing he possesses.”

Article 3481

“Good faith is presumed. Neither error of fact nor error of law defeats this presumption. This presumption is rebutted on proof that the possessor knows, or should know, that he is not owner of the thing he possesses.”
In Authement v. Theriot, 292 So.2d 319 (La.App. 1st Cir.1974), a stream, Bayou Terrebonne, was one of the stated boundaries in the description of the disputed land; the other boundaries were stated in terms of abutting properties followed by the names of the owners of the abutting properties. We concluded that such description by boundaries is sufficient to create “a just title for purposes of ten years’ acquisitive prescription”, it being “a deed sufficient to convey property as between the parties.” We also reiterated the well established principle that:
To support the plea of ten years’ acquisitive prescription, [the one claiming it] must also establish the requisite good faith possession. The possession required must have been “continuous and uninterrupted, peaceable, public and unequivocal.” ...
The possession necessary to maintain the plea of ten years’ acquisitive prescription demands upon the nature and character of the land, ...
In Levraea v. Smith, 424 So.2d 277, 278 (La.App. 1st Cir.1982), we stated the well established jurisprudential principle that “the order of importance for value of the various calls which may be included in a property description are: (1) natural monuments; (2) artificial monuments; (3) distances; (4) courses; and (5) quantity.”
Winch v. Veazey, 282 So.2d 779, 783 (La.App. 3rd Cir.1973), rejected defendant’s contention that the line between where the ridge stops and the marsh begins was a visible line or monument, “evidenced by sandy soil on the ridge and black muck in *741 the marsh, and by short grass on the ridge and saw grass in the marsh.” In rejecting that argument, the Court, per Culpepper, J., reasoned as follows, in pertinent part:
... [TJhere is an area from 40 to 200 feet wide where the ridge and the marsh run together, depending on whether the weather is wet or dry. ... This is not the type of visible boundary contemplated by Article 852 as sufficient to show definitely the extent of possession.
C.C. art. 852, referred to in Winch v. Veazey, supra, was repealed by Act 170 of 1977 and Act 169 of 1977 substituted the present article 794 for it, effective January 1, 1978. Official Revision Comment (a) of article 794 states the new article does not change the law. Section 8 of Act 169 states that: “The provisions of this Act shall apply to all boundary matters arising under the Civil Code of Louisiana, including those existing on the effective date of this Act; but no provision may be applied to divest already vested rights or to impair the obligation of contracts.”
In Morgan v. Fuller, 441 So.2d 290 (La.App. 2nd Cir.1983), 3.5 acres of “marshy land” was conveyed to plaintiff in 1939 and to defendant in 1971 via Sheriffs Sale; the 3.5 acre parcel was both a part of plaintiffs 123 acres and defendant’s 80 acres. Plaintiffs 1939 deed stated that the land being conveyed consisted, in part, of “that part of W 1/2 of NW 1/4 lying North of Gaskin’s Branch, all in Sec. 2, ...” Defendant’s deed made no mention of the branch. About nine years after acquiring his 80 acres, defendant sold the timber on it; the timber buyer cut timber on the 3.5 acre marshy area contained in both plaintiff’s and defendant’s descriptions. Plaintiff neither cut timber from the 3.5 acres nor used it for “other like purposes.” In holding that plaintiff was the owner of the 3.5 acres of marshland, the court of appeal reasoned, in pertinent part, as follows:
Our jurisprudence has consistently recognized the principle that when a contiguous tract of land is conveyed by a single deed, possession exercised on any part of that tract extends, constructively, to the limits of the land called for in the deed.

... [PJlaintiff s exercise of corporeal possession of other parts of the property described in his deed operated as constructive possession of the entire tract, including the 3.5 acres. ...
Ard’s Creek, like the bayou in Authement v. Theriot, supra, was stated as a boundary in Baughman’s June 21, 1941 deed from Carl S. Conerly; that deed was “sufficient to convey property as between the parties” and was therefore “translative of title”, i.e., “just title”; therefore his “continuous and uninterrupted, peaceable, public and unequivocal” good faith possession of the disputed area between the creek and “east edge of creek swamp” was sufficient for Baughman to acquire it by the acquisitive prescription of ten years. We reach this result based on his actual possession, evidenced by various acts of dominion exercised from 1941 up to the time plaintiff’s pond, or that of his ancestor’s immediate vendor, Jesse Harris, inundated any portion of the disputed area, coupled with his continuous, uninterrupted constructive possession after inundation by virtue of his actually possessing the remainder of the fifty acres. Morgan v. Fuller, supra.
The suit before us combines features of both the petitory and boundary actions, based not only on plaintiff’s petition, but also on defendant’s various defenses, including acquisitive prescription of 10, 20, and 30 years.
In Fruge v. Lyons, 373 So.2d 220, 225 (La.App. 3rd Cir.1979), the Court, per Stoker, J., observed as follows:
We regard it as now well settled that title prescriptions may be pled in boundary actions, and boundary prescriptions may be pled in title suits. Ledoux v. Waterbury, 292 So.2d 485 (La.1974)....
... Article 852 is a boundary action provision now embodied in Articles 794 and 796, and according to paragraph (a) of the Reporters Comment thereunder, *742 does not change the law. ... [C.C.] article 3499 is not a boundary action provision but is a general provision providing for acquisitive prescription through possession for thirty years without any need of title or good faith in the possession. Old article 852 and new articles 794 and 796 provide for the same result in the context of boundary actions.
Hence, defendants may legally rely on old article 852 or new articles 794 and 796 to the extent that they may otherwise be applicable under considerations of retroactivity or inapplicability of Act 169 of ... 1977 ...
In our view it is not necessary to a decision in this case to determine if the new or old boundary articles apply here. As noted, no change in the law was intended. Therefore, articles 794 and 796 merely clarify article 852.

The issue ... is: May the Lyons apply the principle of “tacking” under the circumstances ... that the subject property lies outside or beyond the description contained in their title?
Preliminarily ... we quote the ... pronouncement of the Supreme Court in William T. Burton Industries, Inc. v. Wellman, 343 So.2d 996 (La.1977), a case which applied old article 852:
Possession to a physical boundary for thirty years, like the acquisitive prescription of thirty years established by Article 3475 of the Civil Code, entitles the possessor to the ownership of the property possessed. ...
The question is resolved by this Court’s holding in Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 (1957) where this lucid statement of the law is found:
“[Wjhere there is a visible boundary which has been in existence for thirty years or more and the defendant in a boundary action and his predecessors in title have, in addition to the land described in the title, actually possessed land extending to that visible boundary, a plea of prescription of thirty years should be sustained. It is our view that for the rule to be applicable two conditions must concur: First, there must be a visible boundary, artificial or otherwise; second, there must be actual uninterrupted possession, either in person or through ancestors in title, for thirty years or more[,] of the land extending beyond that described in the title and embraced within the visible bounds.”
When these conditions are fulfilled, as they are in the case at bar, the absence or failure of consent on the part of the contiguous owner cannot affect the rights that have accrued by operation of law to the possessor under the thirty-year prescriptive plea.

... [U]nder ... C.C. Art. 852, the tacking of successive possessions up to the established visible bound between two estates is permitted, whether or not the land in dispute is included within the title description of the party pleading prescriptive title under this article, (citations omitted.)
This holding was again followed in a petitory action considered ... in Dubois v. Richard, 223 So.2d 198 (La.App. 3rd Cir.1969). This position regarding tacking was recently affirmed ... in a boundary action applying new Article 794 of the Civil Code. LeBlanc v. Laborde, [368 So.2d 1126 (La.App. 3rd Cir.1979)].
Hence, ... under either old ... Article 852 or new ... Article 794, a possessor without good faith may tack on to his own possession that of his ancestors in title in order to make up the required thirty years adverse possession. ... The possession was exercised up to a visible boundary, the fence which existed over the period from 1935 until July 4, 1975. ... 373 So.2d at 225-228. (Bracketed and parenthetical material supplied by us.)
Ard’s Creek is a “natural object” as that term is used in new C.C. art. 784 which defines the term “boundary marker” *743 as “a natural or artificial object that marks on the ground the line of separation of contiguous lands.” Meyer v. Comegys, 147 La. 851, 86 So. 307, 309 (1920); 11 C.J.S., “Boundaries”, § 6, p. 546.
The Supreme Court, in Nattin v. Glassell, 156 La. 423, 100 So. 609, 610 (1924), a boundary dispute in which streams were stated as boundaries, made the following pertinent pronouncement:
The polar star in all controversies of this kind should be, if it can be seen, the intention of the parties. Of course, there are certain well-recognized rules, both in the statute law and jurisprudence, which serve as bearing signs in ascertaining such intention when it is otherwise obscure. Among these are that when persons own property on either side of a nonnavigable stream, which is designated as the boundary, the center or thread of such watercourse is considered the dividing line; ... (Emphasis supplied.)
Plaintiffs vendor, Jesse Harris, like the ancestor in title of plaintiff in Patterson v. Holmes, 464 So.2d 394, 400 (La.App. 1st Cir.1985), “accepted and acknowledged” by his actions that the North edge of Ard’s Creek formed the now contested boundary between plaintiff and Baughman. Not the least of those actions was Harris’ signing as a witness on the April 20, 1951 mineral lease executed by Baughman, referred to previously. Another action of Harris was his appraising the timber in the disputed area in 1952 for Baughman before he sold the timber to a sawmill operator.
The district court, after making the findings of fact stated at the outset of this opinion, found as a fact that: Mr. Porter’s survey “shows a waterline on the north side of Ard’s Creek which delineated the bank of the pond area backed up by the dam built by plaintiff’s ancestor in title. It is difficult to establish the exact edge of this pond area as it has existed through the years.” The Court further found: “that water has been standing in the pond area as a result of the dam built by Mr. Harris and maintained by plaintiff to the extent of the waterline drawn by Mr. Porter on May 10, 1982. This water has been standing a sufficient length of time to prohibit defendant from acquiring the pond bottom by acquisitive prescription.” Based on those findings, the court concluded that “since the common ancestor to both defendant and plaintiff’s title executed the deed to plaintiff’s ancestors in title before executing the deed to defendant, this court finds that plaintiff has better title to this pond bottom.”
The determination of a disputed boundary is a question of fact which should not be disturbed on appeal in the absence of manifest error. The findings which are stated at the outset of this opinion are amply supported by the record but the findings and conclusion stated in the preceding paragraph are manifestly erroneous. Among other things, the record, as a whole, establishes that when each of the several dirt dams Harris built across Ard’s Creek “blew out” the creek waters ceased backing up on the land in dispute between the creek and the eastern edge of the creek swamp. The record shows that Williams’ dirt dam which “blew out” from torrential rains produced by Hurricane Camille in 1969 was replaced in 1973 by a strong and tall concrete dam.
Even if we accept as true the district court’s findings that the pond inundated the disputed area continuously from 1947 onward, when the first Harris dirt dam was built, the legal conclusion the court reached is incorrect. The Baugh-mans regularly utilized the disputed area, now a pond, between the North side of Ard’s Creek and the so-called Eastern edge of Ard’s Creek Swamp, by cutting and/or selling timber and firewood therefrom, and for a variety of recreational activities, without disturbance from anyone, continuously from June, 1941 to and including the date of trial, in July and October, 1982, far in excess of the time required for 30 years acquisitive prescription. Even when the dammed up creek waters inundated the disputed area for intermittent periods of various durations between dams being *744 “blown out” by heavy rainfalls, hurricanes, or other causes, Baughman and his guests enjoyed water-related activities. Baugh-man’s acts of possession constituted much more than the “constructive possession” of the bottom of the pond, which is all that is required. His “exercise of corporeal possession of other parts of the property described in his deed operated as constructive possession of the entire tract, including the” disputed area. Morgan v. Fuller, supra.
For the foregoing reasons, we hold that Baughman’s property extends to the center or thread of Ard’s Creek, which watercourse or stream is the dividing line between the Williams and Baughman properties. Nattin v. Glassell, supra. Accordingly, the judgment of the district court is reversed. It is Ordered, Adjudged and Decreed that the center or thread of Ard’s Creek is fixed as the boundary between the land of James Elude Williams and James C. Baughman. All costs of these proceedings, both in district court and on appeal, are assessed against plaintiff-first appellant, James Elude Williams. C.C.P. art. 2164.
REVERSED.